(19 Misc. Rep. 317.)

## ROTH v. HAVILAND.

### (Oneida County Court. January, 1897.)

CONTRACTS—INTERPRETATION.

Plaintiff agreed with defendant to grow a crop of corn, and deliver it at defendant's factory, "in the town of C., or at any other place or places in the town of C., at such times and in such quantities as the party of the second part [defendant] may direct, and in good canning condition." *Held*, that defendant had the right, so long as he acted in good faith, to limit the deliveries of corn both as to time and quantity, whether the deliveries were at the factory or at other places.

Appeal from justice court.

Action by William Roth against Lyman P. Haviland. From a judgment in favor of plaintiff for $37.45, damages and costs, defendant appeals. Reversed.

The action was brought to recover damages for the breach of a contract of which the following is a copy:

"Memorandum of agreement made between William Roth, of the first part, and L. P. Haviland, of the second part: The party of the first part, in consideration of one dollar to ——— in hand paid, and the covenant and agreement of the second part hereinafter contained, hereby covenants and agrees: First, to plant, or cause to be planted, four acres of white sweet corn, in the corn-planting season of 1895; second, to cultivate said corn carefully and well, and to pick the ears from said corn, and deliver the same, in their husks, to the party of the second part, the same day said corn is picked, at the factory operated by me in the town of Camden, N. Y., or at any other place or places in the town of Camden, at such times and in such quantities as the party of the second part may direct, and in good canning condition. For which the party of the second part covenants and agrees to pay the said party of the first part, on or before November 30th next, fifty cents for each and every one hundred pounds of husked white sweet corn, delivered as aforesaid, said corn to be husked by party of the second part, and the party of the first part agrees to plant for no other packer in the season of 1895, and plant the seed corn selected by the party of the second part, and to deliver no corn Saturday afternoon.

                                            "Wm. Roth,
                                            "L. P. Haviland.

"Camden, N. Y., Apl. 17th, 1895."

The plaintiff, the second week in May, 1895, planted four acres of white sweet corn, the seed having been furnished by defendant, and cultivated as required by contract. Plaintiff testified that it became "fit for harvest about September 8th or 10th." Between the 6th and 8th, he was told by defendant's agent "to get right into it when it was fit, and bring it along." Plaintiff further testified that he picked September 9th and 10th, and delivered at defendant's factory. On the 10th, defendant's agent told him not to draw any more until he heard from him. Plaintiff told him he was afraid of early frosts. Other persons were drawing, and defendant's agent said it was because they could not handle so much corn. On the 13th of September, plaintiff received word to continue the delivery, and plaintiff picked and drew on the 13th. Plaintiff was then told he could draw again on Saturday. On Saturday, plaintiff went there, and was told he could not draw until Tuesday following. At this time the corn was in good condition. A heavy frost occurred on Saturday night, the 14th of September. On the following Tuesday, plaintiff picked and delivered one load, and was told to deliver another the next day. Plaintiff picked and drew another load on Wednesday, but defendant refused to receive it. Plaintiff testified that at this time the frost seemed to have affected the ears. Defendant looked at it, and said the corn was of no use to him, and that, if it was all alike, he did not want any more. Plaintiff told him it was all alike. Plaintiff

further testified that, when he made the contract, he knew that corn struck by the frost was not in good canning condition, and that he did not think that the load that defendant refused was as a whole in good canning condition. He also testified that the load he delivered on Wednesday was plainly affected by the frost; that the balance of the corn was just as bad, and that he knew it could not be delivered in good canning condition; that, for all he knew, the corn, except for the frost, would have remained in good canning condition during the week following the frost. All the corn that was delivered was paid for, and this action is brought to recover the damages sustained by plaintiff by the failure of defendant to receive all the corn before it was injured. There was no substantial dispute as to the facts.

R. S. Johnson, for appellant.
A. D. Kneeland, for respondent.

DUNMORE, J. This action is brought to recover damages for an alleged breach of the contract in question. Our first inquiry, therefore, is whether or not defendant has failed to perform his contract. Plaintiff commenced the delivery of the corn September 9, 1895. The crop was damaged by the frost on Saturday night, September 14th, following. Plaintiff contends that it was the duty of defendant, under his contract, to receive all the corn during those six days, and that, because he declined to do so, he violated his agreement. The contract provided that plaintiff should deliver the corn "at the factory operated by me [defendant] in the town of Camden, N. Y., or at any other place or places in the town of Camden, at such times and in such quantities as the party of the second part [defendant] may direct, and in good canning condition." Plaintiff contends that the words "at such times and in such quantities," etc., must be construed as applying only to the corn delivered elsewhere than at the factory, and not as applying to the corn delivered at the factory. If that is so, then the clause "and in good canning condition" must be limited also as applying only to the corn delivered at places other than the factory. That construction would require defendant to pay for all the corn delivered at the factory, whether in good canning condition or not; that is, plaintiff could have picked the corn before it was sufficiently matured for canning purposes, or could have waited until it was too ripe, and yet defendant would have been obliged to pay for it. I do not think the contract will bear that construction. I think the words "at such times and in such quantities," etc., must be construed as applying to the corn delivered both at the factory and elsewhere. It is very clear to me that the parties intended by this contract that defendant should have the right to limit the quantity of corn delivered at the factory, so that it would not spoil upon his hands before it could be canned. Plaintiff contends that this construction of the contract would enable defendant, in case he did not intend to take more than half the quantity of corn contracted for, to postpone delivery until the crop was destroyed, and thereby avoid the performance of his contract, and yet escape liability for nonperformance. I do not think so. If the postponement of delivery by defendant had been in bad faith, and not because he had all the

corn he could handle, plaintiff very likely could have given some evidence of it. But no evidence was given upon the trial tending to prove any such fact, and no such claim was made at the trial so far as the record discloses.

But, in any event, the contract, being free from ambiguity, should not be given an unnatural construction or one not contemplated by the parties at the time it was made. The parties, by their contract, agreed that the corn should be delivered at such times and in such quantities as defendant directed. Defendant exercised the power given him by the contract, and gave directions as to the time and quantity of delivery. There is no evidence which would sustain a finding that he acted in bad faith. Defendant, doubtless, was obliged to take the corn before it became too ripe. Had he delayed receiving the crop until it was not in good canning condition, because of being too ripe, very likely the delay would have been unreasonable, because, evidently, the parties contemplated, when the contract was made, that defendant should receive the crop before it became too ripe. Plaintiff, however, testified that this corn, except for the frost, would have remained in good canning condition during the week following the frost, so far as he knew, and no evidence was given to the contrary. I therefore do not think the evidence would sustain a finding that defendant unreasonably delayed the delivery of the corn. By the terms of the contract, defendant was to pay only for corn "delivered [as provided in the contract] in good canning condition." As it was conceded the damaged corn was not, and could not be, delivered in good canning condition, there was no liability on the part of defendant to pay for it. Had the parties contemplated that the loss by frost before delivery should be borne by defendant, the contract should have so provided. I am of the opinion that the justice erred in reaching a conclusion that defendant had failed to perform his contract, in not accepting the entire crop before the frost. As I am of the opinion that plaintiff failed to establish any cause of action against defendant, it is unnecessary to examine the other questions raised upon this appeal. The judgment must be reversed, with costs.

Judgment reversed, with costs.